If the Court's permission, I'd like to reserve a moment, a minute for rebuttal. Your Honor, in this case, the district court departed downwards at sentencing, finding the defendant was central to his family and of tremendous importance to his children. The question then presented in this case is whether this is the sort of extraordinary circumstance, family circumstance in which a departure is permitted. The guidelines specifically state in 5H1.6 that family circumstances are not ordinarily relevant to a departure, and there is an awful lot of case law at this point defining just what type of circumstance is the circumstance that is so extraordinary that it's relevant to departure, and that test set out most prominently for this Court in the Leon case is whether the defendant is an irreplaceable caretaker for elderly children or a seriously ill family member. Counsel, should the district court take into account the duration of the sentence as affecting the ability of the defendant to support the family? Yes, Your Honor. This has been reduced to nine years now, right, this case? Yes. Well, for nine years, he's going to be locked up making license plates or whatever and doesn't have much contact with the family. So are the objectives of the statute met on the reduction or not? And did the district court make any finding on this?  No, Your Honor. And in fact, the way that the sentence was reduced here, and it is a long sentence, and these are the sentences that are in the guidelines and, you know, based generally on the statutes for drug offenses, there is not a tie between what's approximately a two-year reduction in the sentence here to some need to care for a family member. In the Leon case, the leading case before this Court, there was a seriously ill wife of the defendant who had heart problems, kidney problems, and ulcer, and also depression certified by a psychologist and was a suicide risk. And that sentence was reduced to eight months from something around 27 to 33 months. In that case, Leon specifically said that the extent of the departure is supposed to be linked to the need to protect the family member. And I suppose the logic that would flow from Leon is when you reduce something to eight months in a case like that, then perhaps that's a period of time that the caretaker can be away from the family member and the family member can still survive. I understand that here we're dealing with an extended family in a sense, and we have some very young children that may need guidance through secondary school or through college if they're going to go beyond secondary education. Yes. And the defendant would be out of prison in time to perform some of that guidance and support and assistance, right? Well, not actually, Your Honor. In this case, at the time the defendant is released, his three oldest children would be 23, 20. I'm talking about an extended family. These guys' brothers are others in jail for longer sentences than his. And that family is, as I understand the nature of this group, they're treated as an extended family. Yes. And the defendant has five children, and their ages are in the record in this case. I'm not sure that ages of his brother's children are also in the record. But once you get into the extended family and you start talking, as the case law would indicate, about is there an irreplaceable caretaker for these children, or even someone who's irreplaceable to provide guidance, which my position would be that's not enough, there's nothing to support an analysis that there's not an irreplaceable caretaker or a guider for a co-defendant's children with ages we don't even know about and an analysis that's never even been done. Is irreplaceable really the standard? Because in Leon, the court just said generally these departures are permissible where the caretaker is irreplaceable. But it didn't really say that irreplaceability was the linchpin of an extraordinary family circumstance departure. Well, Your Honor, I did, you know, put irreplaceable in italics, and that is what most of these cases, and we said on the case. Most of them are. And that's what Judge Royla said, that we said that generally that's what the cases are. Yes. But that's not saying that there can't be others. Perhaps, Your Honor, but there are not others. In Miller, for example. Well, the problem with that, Your Honor, I understand the court's question, and Leon is surveying a lot of case law, and so if one wants to read Leon specifically on its facts, perhaps its whole analysis of what's a, you know, sort of synthesizing the case law is dicta in Leon, but you have to look at the other cases. And in the Miller case, for example, from this court, it involved a mother who had two young children, one of whom was born during the time that the case was pending, and this court reversed the departure and had language about ordinary psychological harm to a child is not enough. That's where I think you should be arguing. That's where I see the argument, the appropriate argument for this departure is, is it extraordinary or is it ordinary? And the ordinary situation is, you know, if you have a family and you commit a crime, your family's going to suffer when you go to jail. That's the ordinary situation. Yes. Now, then a court has to look at, well, is there something that takes it out of the ordinary into the extraordinary realm? And in looking at this case, I'm thinking maybe it's a close case. It is an unusual circumstance to have such an extended family, most of the male figures of which are serving very lengthy prison terms, and in a culture where the women and children are perhaps more dependent on this male figure for protection. And I think that's what you need to be arguing, why this is really just an ordinary case, you know, not just labeling it, you know, it's an irreplaceable case or not irreplaceable case. Yes. I understand the court's point, and I think part of the problem, if the court were to go down that road, is finding a circumstance like this could be extraordinary, is then it's very common for defendants to have children, even several children, to have some sort of family that cares about them. And then we would get in a situation where. This isn't caring about them. As I understand it, the representation is that this is like the paterfamilias. I mean, this is the head of the branch of the family, and they're all dependent on him, and all the others are going to be in jail, and he's the one that is going to be in charge. It's 20 people. It's not like having two or three children dependent on someone. There's a family of 20 people, and he's the senior member, and all the others are going to be in jail. And is that a usual circumstance? Well, I think, Your Honor, respectfully, that's reading an awful lot into the court's findings here. The court indicated in the transcript that it came to the hearing not inclined to depart. And what happened at the hearing was the court heard from two children of the defendant, just two children of the defendant who talked only and very movingly, just from reading the dry transcript, about what the defendant means to them in the sort of way that many people are meaningful to their children. And while that's sympathetic, that's not the sort of – it's a lot to read into that, to read – He says, I think he's in a unique position in his family, and I think he has unique importance not only to his own children, but to the children of his brothers. That is true. And it is on that basis that I am making this departure. Right. There was nothing at the hearing, Your Honor, that was adduced to support that as a factual matter, nothing that the children said. And as far as – That brings us to the second issue. Yes. There's a substantial differentiation between the brothers' sentences and his sentence. Time to be served. Your Honor, there's not a record on that in that there are 37 co-defendants in this case. One problem that we have in this case is that, you know, we have cooperators in this case, and if a cooperator is to get a three-level departure, then the cooperator complains to us because another defendant who didn't cooperate got such a departure without, you know, having to put themselves out there to cooperate. But we don't have sort of a full record now. Not all the defendants have been sentenced to really compare the sentences. If the Court were to consider – reject my arguments here and to go down this road to saying that the departure can be supported based on the defendant's role as the pater familiare or head of the extended family, I'd like the Court just to think about that. How is this departure from 11 years to 9 years? How is that tied to that? See, that's an issue I have with that. Yes. Because if you're going to rule that way and you need to make a greater departure, there's no cross-appeal asking for a greater departure. Yes. Because it's not meeting the objective of the departure. But I don't even think that's a requirement in the case law. Yes. And that's true of all the cases. Even the irreplaceable whatever-it-is caretaker, they don't let you out immediately. All they do is reduce your sentence. So the irreplaceable caretaker is going to be in prison for a while. So you're not going to solve the problem. But that's true with every departure. But to the extent that these are upheld on appeal, Your Honor, as in Leon, there is kind of a rational tie between the sentence that ends up and caring for a family member. In Leon, it ended up to be 8 months in prison. And one can infer from that that it makes some sense that the defendant could be away from his wife for that relatively short period of time. And they would say even in the irreplaceable caretaker cases, there is no such thing as a departure if it's a long sentence. We haven't faced a situation where the proper situation when that would be raised is if the defendant truly is an irreplaceable caretaker and there is someone who's defendant and the court departs from a ---- The defendant is purely an irreplaceable caretaker and he gets a 12-year sentence or a 10-year sentence. Would you say departure is inappropriate because he's going to have to be away 8 years or 7 years anyway? Under the law, the law at least formally allows that. And there's not a case sort of squarely addressing that departure from 12 years to, say, 8 months as in Leon. I didn't say 8 months. I said 8 years. From 12 years to 8 years, say, with an irreplaceable caretaker. I think ---- Would you say that's not permitted by the guidelines? In the general circumstance, Your Honor, I would say no because it's hard to see how that departure is something that really has to do with being an irreplaceable caretaker. If the judge went from 12 to 8 years, the government would be in here saying you should go to 8 months. Well, one has to look, first of all, whether the defendant actually is an irreplaceable caretaker. If there's something that ---- I know I'm assuming that. Yes. That's an assumption for the purpose of the question, that we're dealing with an irreplaceable caretaker. And Judge Wardlaw raised the question of do you really accomplish the purpose of the statute if you only reduce from 12 years to 10, say, or 9? Yes. And you seem to agree with that. Well, the terms ---- the law in Leon is the extent of departure serves to protect the family member, the other family members, not the defendant. The guidelines are silent on the time of the sentence being a factor in the calculus, right? Yes, Your Honor. And ---- So is it just up to the courts to do something that's reasonable? I think following Leon, the court is supposed to tie the extent of departure to the reason for the departure. And my argument here is that the way in which the departure was made here sort of reveals the fact that this is not an irreplaceable caretaker situation. It's a situation of simply sympathy for ---- In order to evaluate the argument, since if we were to write an opinion explaining this, you would say that in order to ---- with an irreplaceable caretaker, it would have to be a departure that would get him out quickly. One would have to ---- that would help, Your Honor. But one would have to look at the record then, and we would be dealing with whether he actually is an irreplaceable caretaker, not just as we are here. You don't seem to be capable of understanding a hypothetical question. Yes. I'm sorry, Your Honor. Which is if he is an irreplaceable caretaker. Okay. That's the case I'm talking about. Well, there is an irreplaceable caretaker. Your view of the guidelines and departure is that you must deport down to ---- Probation. Okay. Let me give you a ---- Otherwise, it's an illegal deport. If you deport longer, it will be legal. I'm sorry. I'm not trying to be evasive. If he is an irreplaceable caretaker, then the departure is permissible. All the way down to one month, right? Well, we would be arguing over whether the extent of the departure serves to protect the other family member. And there is no law on that. I've read a lot of these cases. I don't believe there's law on that. You would be saying if the judge don't depart just a couple of years, give him a longer departure in order to be legal. Well, we might ---- it depends on the situation. We might disagree with the fact that he's an irreplaceable caretaker. I have one other question on another subject. Because we seem to be going round and round on this one. Yes. Standard of review. Yes, ma'am. What does the government suggest is the appropriate standard of review? Under the PROTECT Act, it's a de novo standard of review. And I think that's clear. Even the sentencing here was after the PROTECT Act. It was in November. What is de novo? What's the factual determination here? Well, there is a legal determination here. Under the PROTECT Act, the application of the facts to the law is de novo review. And here the law is ---- Application of the law to the facts. Correct. Yes. That is correct. And here the law is ---- What are the facts? Are the facts that ---- let's assume we had an irreplaceable caretaker case, which we don't. Yes. Is the determination that he's an irreplaceable caretaker a factual determination? There are components of it that may be. For example, if there was an argument in the court about whether the other family member actually had a heart problem or a terrible problem that they were in need of care for, that would be a factual sort of question. Here the facts are not in dispute. The question is whether the facts that were before the court, and I think a fair reading of the record is that the departure was primarily based on what the kids said in court, but the facts before the court, whether that warrants an irreplaceable caretaker finding. But the judge did not make specific factual findings. Do we need to send it back for specific factual findings? I don't think so, Your Honor, because the court was not in the correct ballpark as a matter of law, and because the PROTECT Act states in 3742G that a new departure can be applied on remand only if it was applied, the departure was applied at the original sentencing and it was upheld by this Court. And because this departure was not applied correctly at the original sentencing, there should not be a remand. It's kind of, I mean, this is the PROTECT Act. It's kind of a one-shot opportunity. And I simply, I'm over my time and I'm glad. You have been for quite a while. Yes. I'm sorry, Your Honor. In closing, I would simply say that I think that the extent of the departure here shows to reveal that this is not an irreplaceable caretaker departure, but one that is possible. We will give you your minute to rebut. Yes. Thank you. Good morning. May it please the Court. Linda Stoykovich on behalf of the appellee. Counsel, you're from Chicago. Do you practice out here regularly or? As of late, Your Honor, it appears that I have been. Okay. I've been tied to a series of these cases, Your Honor. You're on to the next circuit. Yes. Okay. I am, Your Honor. I think I'll start off with the Court's most difficult question with regards to this matter and whether, and that question appears to be whether the departure appropriately fits, protects the family members from impact of the defendant's incarceration. If it doesn't, what do we do? Remand so that he can give a greater departure? Well, we would never be opposed to that, of course, Your Honor. But our position is that there is no requirement in the law currently for an absolute free fall. Something in the guidelines that says that, but can you apply a little common sense to the problem? What can a man who's in jail nine years do to support a family that's out on the loose? Well, he's locked up for nine years. I think it goes back to the question of how is he irreplaceable? He has been ahead of a family that Your Honors have recognized is a large family full of 20 people. He has emotional support and financial support, and the emotional support, I believe, has been the overarching concern here. He can provide emotional support for nine years. Why can't he just serve his term and provide emotional support? What I believe is that the district court recognized was that there was a point where his emotional support is needed back in the home, that they could perhaps draw out during his sentence emotional support for some of the women in the family, but that he would be needed back in order to support not only his five children, but his brothers' children and wives. Where do we find expressed findings to that effect? As to whether he needs it? There are citations in the record where the defendant himself talks about how he has been the financial support and emotional support, I believe it was the governor's excerpt to the record at page 113. The defendant himself talks about how he has been. Is the district court relying on that particular fact in setting a nine-year term? I believe that is one of the main facts. Is that what the district court said? The district court said that this was a close call and that she was basing her decision in large part to his role with regards to his family and his extended family. She indicated that this would not be a departure that she would grant for his brothers. He is the oldest brother in this large family. He is responsible based upon his role in his community as the leader, as the patriarch of the entire family. The district court did recognize that. But she didn't make any findings. She did not make findings back to that effect. She just summed up and said, well, he plays a central role in the family. Central role doesn't strike me as being so out of the ordinary. I happen to think that every parent plays a central role in their family in raising the children and giving them financial and emotional support. And I would agree that the word central role isn't enough. But the fact is she did see that she indicated his position was unique. She did not. She did. She said it was unique. But where are her findings that support this? Did she say central role not only for his own family but for all these other families? I'm sorry, Your Honor. I didn't hear the question. Did she say central role not only for his own children and wife, but central role as far as the other brothers' families are concerned? I do believe that that is what was said in the last sentence of her decision, where she had indicated that she was basing her decision upon his role in the extended family and that this would not be a departure that would be allowed for other members of his family. I would like to go back to one point, though, with regards to whether this needs to be a freefall departure or not. One of the cases that wasn't talked about by the government is Aguirre, I believe is how it would be pronounced. In that case, although that was a pre-Protect Act case, the court departed from a sentence of 108 to 135 sentencing range down to 70 to 87 months. The court recognized, I believe in that case the defendant mother was facing prison and there was an eight-year-old son and the father had died while she had been incarcerated. The court decided to depart largely based upon her emotional role in the child's life. I think the idea that it protects the family is important from that emotional aspect and also from the aspect that there is a public interest in him being allowed out after nine years. There is a sort of finite point that this family can survive without the defendant being returned to his family. I think the district court recognized that and there was no requirement for a freefall. I'd like to go back to the question of irreplaceable caretaker. One of the cases that I found instructive, although the Lanham case indicated that he needed to be irreplaceable, there's no real definition as to what that is. It said that generally our cases are cases involving irreplaceable caretakers. Yes. And I agree. What does generally mean to you? Well, generally would mean that it isn't every time. It is a broad, it is a broad, overarching term. And I believe that it does need some clarification. One of the cases that I found instructive here was the Eastern District of Wisconsin's case. I know it's a district court case. But in that case, the district court discussed that some of the issues that a court must look at would be family circumstances, the responsibility the defendant has for each of the family members, the role in everyday life, whether others could replace the defendant, or whether the absence of the defendant would require the family to go on public assistance. I think those factors considered would assist the district court in determining if he was irreplaceable or not. And one of the key points there was that the magnitude of the responsibilities is sufficient to take it out of the heartland of cases, to make it extraordinary. I believe that here the magnitude of the defendant's responsibilities is such that it would have taken it out of the the quote-unquote irreplaceable caretaker of this family. And I believe that there are sufficient facts in the record to indicate that. He's the father of five. He has a wife who doesn't work. It's disfavored in the community for her to work. She has no standing. She's not skilled. The defendant provided also significant financial support. The record indicates he worked 17 hours a day to provide for the entire family. Also, similarly to the Eastern District case of Jabara, the defendant was the glue here. He kept the entire family together. And one of the similarities there also is that in Jabara there were several defendants that were family members, and the court considered that in reducing her sentence. And that, like in our case, in this case, the district court considered the fact that there were other defendants, and his role was so important that she reduced his sentence to nine years. There's one other issue also that there has been no evidence that the government has indicated, well, there's really been no evidence of anyone to fill his shoes, but there really is no one to fill his shoes. His 14-year-old son said, I am currently the man of the house. He's not an adult. That isn't enough to fill the shoes of the defendant and make his such. He was an irreplaceable caretaker. There's one other issue I'd like to address, and that was the supplemental filing that we had regarding Blakely here. Because the standard here is de novo, and we understand under the PROTECT Act that it is de novo. What part is de novo? And we review the factual findings with the normal clear error standard, right? Where do you think fact ends and law begins in this analysis? We have cases before the PROTECT Act which said that the determination of extraordinary circumstances was a factual determination. How do you tell, where would you draw the line between fact and law in this case? Well, I mean, this was a difficult question that I had considered. It is, the line is in determining whether he's irreplaceable does hinge upon mostly factual circumstances as far as we can see. It really, it's a standard that can be set out, but really each case has to be looked at on a fact-by-fact basis. And whether he was irreplaceable clearly has to be supported by the findings. The law to be applied is the guidelines, isn't it? Yes, it is. Does it go beyond that other than case law, interpreting the guidelines? Not as far as we're concerned. And, you know, it is our position that the district court was in a far better position to review this case. There were 38 defendants. She was familiar with these types of cases and had significant experience with all these defendants. And I think that she was probably in a better position to make that judgment. With regards to Blakely, our argument would be that although Blakely is currently up on appeal through Booker and Fanfan, our argument is that this case, in effect, turns it on its head and actually, because of the de novo review, acts as if to apply an enhancement in this case. Well, I think we can wait for the answer on Blakely. And that's what we would request, is that this, before making any decisions, that this Court take into consideration the manner in which Blakely will affect this case. In conclusion, we ask that this Court uphold the district court's departure. Thank you. Your Honor, I have only one sort of informational point that I probably should tell the Court. There's no reason why the Court or even defense counsel would be aware of this, but there was a departure, a family circumstance departure, granted for co-defendant, defendant's brother, Adnan Issa, and that's on appeal. Within the last few weeks, notice of appeal and cross-appeal have been filed, so the government is appealing a downward departure for a brother. That's case number 04-50524 and 04-50534. Is that also by Judge Snyder? Yes. It's in the same case. The facts are not on the record, but to the extent that the Court's decision might turn on whether it's a... It's on the same family circumstances ground, and the government's position, again, is that it's one based on sympathy rather than irreplaceable caretaker. But she said she wasn't going to do it for any other of the relatives. This is why I bring it to the Court's attention, and I don't want to sandbag the defense counsel if the defense counsel doesn't know the record in that. And I just felt like I should bring this to the Court's attention, that there isn't, there was a departure, and there is an appeal of that departure. To our Court? Yes. And at this point, only the notices of appeal have been filed. There's, I think that the opening brief, which would be the defendants, is due in January, and there's a counsel situation where there might be a replacement counsel appointed, so that may get delayed further. So there's no imminent decision or even briefing in that case. But there was a family circumstances departure granted, and it's on appeal. And I'm glad if the Court wishes to handle it. I assume if you wanted us to consider that at all, you would have mentioned it and counsel would have had a chance to say something about it and wouldn't have saved it through rebuttal. I'm sorry, and I don't mean to sandbag. I did not. I had it in my notes to present to the Court. I did not present it. And I'm glad if the Court wants to hear a response from defense counsel. I simply felt like I should not sit here and not provide that to the Court. And I'm glad if defense counsel is given a chance to respond, and even if I'm given no further chance to respond. Well, let me ask another question while you're there. Yes. And that is in a pre-Protect Act case, Roe, we said we reviewed for clear error the Court's finding that a particular circumstance is not extraordinary. We reviewed de novo a district court's determination that the commission considered a particular circumstance in formulating the guidelines. This is somewhat along the lines of Judge Bezos' question. Isn't the law that we apply, how the guideline is applied, and isn't the factual determination everything up to that, including the finding of whether something's an extraordinary circumstance? Well, Your Honor, the Protect Act itself does state that the application of the law to the facts is one of those things that's reviewed de novo. It doesn't tell us what the facts are. And are the facts not – is it not a factual finding when something is an extraordinary circumstance? It could be in certain circumstances. However, if one looks at the cases – we cite five cases on page 14 of our brief from other circuits that are recent cases in which departures have been reversed on extraordinary family circumstances. And the Court looks at the irreplaceability in each of these cases of the defendant to caring for the person and finds that it's not enough and reverses. So those cases are support. It reverses under which standard? It's quite possible to reverse factual determinations as well as the application of law to facts. What law are we applying, though? We're applying the law in the guidelines, which is you can depart – it's disfavored, but you can depart if it's an extraordinary family circumstance. Yes, how – The law we're applying is whether it's extraordinary. I respect – yes. But the facts that are found, which is why I'm concerned about the lack of findings. Yes. There we look at to see whether they're clearly erroneous or not. Yes. And she or her findings that, you know, I guess whatever her findings are, they don't seem to be in dispute. So then we apply the law, whether – is it extraordinary? And there we look to our prior case law. What have we found in the past to be extraordinary? Yes. But I suppose I disagree with defense counsel that the only thing one looks to is the guideline itself. If this were 1987, perhaps, but since then we've had a whole lot of cases that create a legal landscape. That's what I was saying. You have to look at the case law to see the framework of what – you know, how we've interpreted extraordinary. Yes. Each judge can't just sit there and substitute their own judgment because it's de novo review. Absolutely. I agree. Well, it's not – it may be that the district court is in a better position to look at what's extraordinary circumstances, that they have a better idea of that than the court of appeals does. And in the past we have said that extraordinary circumstances is a factual finding, probably for that reason. In the past there wasn't a PROTECT Act. True. That doesn't change whether it's factual. PROTECT Act doesn't change what is factual and what is not. Yes. It does help to have set findings, too. That's another question. Well, it could be – if we were in a world in this case where we were talking about the defendant – if the defendant had actually made the argument that he was a caretaker for one of the children, the court was making a factual determination, hearing from the child and perhaps a doctor to determine whether this was real or not, the defendant was a caretaker and whether he was irreplaceable, that would be a circumstance where the district court is making a factual determination of whether the situation is extraordinary. Here we're not in that landscape. The court has heard from children who say that they will miss their father and he's important to them. That, while sympathetic, is not a factual finding. What you're saying is it's clear error, what they did, which is – it's not that it's not a factual finding. She found it was unique. She found he took care of these 20 people, that that was a unique circumstance and that that was sufficient reason. You may think her finding is erroneous, but it's not that she didn't – that it's not a factual determination. Right. I don't disagree with that as a hypothetical, Your Honor. I do think there's a legal aspect to it, too, of missing the appropriate legal standard. Okay. Thank you. Thank you, Your Honor. Counsel, did you want to say anything about the latest statement? Well, obviously, Your Honor, I do feel sandbagged, and I would ask that this court not consider it. It wasn't part of the record. I had no knowledge of it prior to this point, and I would ask that it not be part of your considerations. Thank you. The case just argued will be submitted. The next case to be argued is – Are you going to think of referring to that last case? Likely decision? Yeah. We'll wake it up later. Yeah. Okay. Is the United States v. Smith about to hear? Okay.
judges: Reinhardt, Beezer, Wardlaw